IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHALIL NEWMAN, | CIVIL ACTION – LAW |
| Plaintiff, | No. 2:22-cv-00556-LPL |
| v. | MAGISTRATE JUDGE LISA PUPO LENIHAN |
| OLIVER JACOB BURROWS, ERNA CRAIG, DEPUTY WARDEN REICHARD, OFFICER STONER, MERCER COUNTY PRISON BOARD MEMBERS, NURSE JANE DOE and PRIME CARE INC. | *Electronically Filed* |
| Defendants. | **JURY TRIAL DEMANDED** |

**MERCER COUNTY DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I.     STATEMENT OF THE CASE**

This is a pro se prisoner civil rights case filed by former Mercer County Jail inmate Kahlil Newman against fellow inmate Oliver Burrows, several Mercer County Jail employees, and PrimeCare Medical Inc. arising principally out of an incident that allegedly occurred on March 27, 2022.

Specifically, Plaintiff's Amended Complaint alleges that on that date, he and Inmate Burrows were housed on H-Unit at the Mercer County Jail, which the Amended Complaint states is the Restrictive Housing Unit at the jail. (ECF No. 12 at ¶ IV(C); *Id*. at pp. 5-6 (supplement)).  According to the Amended Complaint, at the time of the alleged incident Inmate Burrows was out of his cell for recreation. *Id*. Plaintiff was, for reasons that are not explained, lying on the floor of his own cell. *Id*. at ¶ IV(C). Plaintiff claims that he looked up as

Inmate Burrows "began to urinate on me." *Id*. In other words, Plaintiff alleges that Inmate Burrows peed on him through the door of Plaintiff's cell.

Plaintiff claims that he "immediately pressed the intercom button in [his] cell" and told Correctional Officer Stoner that he wanted to "see Medical" and "wanted to file a PREA" complaint against Inmate Burrows, because Burrows "had also been making . . . comments and gestures, telling plaintiff he wanted to 'sex him.'" *Id*. When Plaintiff told Officer Stoner about Inmate Burrows peeing on him, he allegedly laughed. *Id*. Afterwards, Plaintiff spoke with Correctional Officer Quimby "who took [his] complaint seriously." *Id*. at p. 4 (supplement).

The day after the alleged incident (March 28, 2022), Plaintiff was separated from Inmate Burrows and moved to a different housing unit. *Id*. Plaintiff was able to file a PREA complaint. *Id*. A PREA investigation occurred. *Id*. at ¶ IV(C)(1).

About a month later, Plaintiff and Inmate Burrows were moved back onto the same housing unit. *Id*. at p. 4 (supplement). Plaintiff alerted Correctional Officer Cooper that he and Inmate Burrows could not be on the same unit because of the PREA complaint. *Id*. Officer Cooper relayed Plaintiff's concerns to the counselors. *Id*. Plaintiff was "moved 'back' to H-Unit, away from Burrows." *Id*.

Because of an alleged "inordinate delay" with the PREA investigation, Plaintiff filed a grievance which was forwarded to Deputy Warden Reichard. *Id*. His grievance was "acknowledged in writing by Deputy Warden Reichard." *Id*. at ¶ IV(C)(2). However, in Plaintiff's opinion, "no appropriate action was ever taken." *Id*. at p. 4 (supplement).

On June 19, 2022, Plaintiff wrote to "the Mercer County Jail Administration, . . . seeking information on the procedures" he would need to contact the Prison Board. *Id*. He does not know what actions were taken in response. *Id*.

On the claims relating to Inmate Burrows' alleged act, the relief sought by Plaintiff includes "injunctive relief" in the form of a "medical exam by [an] outside hospital not associated with the jail, nominal damages in the amount of $5,000, compensatory damages in the amount of $5,000, and $25,000 in punitive damages." *Id*. at ¶ VI.

The Amended Complaint's supplement also alleges conditions of confinement claims. Specifically, it alleges that "'[f]lood lights' remain[ed] on 24/7 inside of the cell" which caused "headaches and difficulty sleeping." *Id*. at p. 5 (supplement). He also claims that he was denied a mattress between March and May of 2022 when he was in the Restrictive Housing Unit ("RHU"). *Id*. at pp. 5-6 (supplement). On these conditions of confinement claims, he seeks injunctive relief in the form of an Order requiring RHU inmates to be given mattresses and to prevent the Jail from illuminating the RHU cells at night. *Id*. at p. 5 (supplement).

The Amended Complaint also attempts to plead a medical claim against Defendant PrimeCare Medical Inc. for allegedly inadequate treatment for an injury to his hand he sustained in a fight with another inmate on May 22, 2022. *Id*. at p. 5 (supplement).

## II. ARGUMENT

### A. Standards Applicable to Motions to Dismiss

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding Motions to Dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of
> Civil Procedure, a plaintiff must come forward with "a short and plain statement

> of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler* [*v. UPMC Shadyside*], 578 F.3d [203,] 213 [(3rd. Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortgage Network*, 748 F.3d 142 (3d Cir. 2014). "[W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis." *Fowler*, 578 F.3d at 210. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 211 (citing *Iqbal*, 129 S. Ct. at 1949). "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. (citing *Iqbal*, 129 S. Ct. at 1950). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id*. (citing *Iqbal*, 129 S. Ct. at 1949). A complaint has to "show" such an entitlement with its facts. *Id.* (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir.2008)). "'Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,'" a complaint is properly dismissed. *Id*. (citing *Iqbal*, 129 S. Ct. at 1949).

**B.     The pro se Amended Complaint attempts to plead claims against government officials who are not proper parties to this lawsuit.**

1.     *The Members of the Mercer County Prison Board are not proper Defendants.*

The Amended Complaint improperly lists the "Mercer County Prison Board Members" as Defendants in this case.  The members of the Prison Board are not proper Defendants in a case like this.

As a threshold matter, there are no factual allegations in the Amended Complaint that, if true, would establish that any member of the Prison Board did anything to violate Plaintiff's civil rights. Because of the laws creating prison boards delineating their authority, it is difficult to envision a situation where an individual prison board member could be held liable in a case like this.

For counties of the fifth class like Mercer County, Pennsylvania law expressly vests control and supervision over a county jail in a prison board of inspectors. 61 Pa. C.S.A. § 1731. Any individual member of the prison board does not have final policymaking authority in this area and is subject to the whims of its other members. *See Doe v. Fayette County*, 2014 WL 5493814, at*8 (W.D. Pa. Oct. 30, 2014) (county commissioners cannot act alone and do not have final policymaking authority because that is vested in a board). Because the named members of the Prison Board did not have final policymaking or supervisory authority to act alone, they cannot be held individually liable and are appropriately dismissed.

2.     *Warden Craig and Deputy Warden Reichard cannot be held vicariously liable.*

The Amended Complaint identifies Warden Erna Craig and Deputy Warden Joseph Reichard as defendants, ostensibly due to their having some perceived supervisory authority over jail operations.

A civil rights' claim against a supervisory official cannot be premised merely on the fact that she was a prison supervisor when the alleged incidents set forth in the complaint occurred. To state a claim, a plaintiff must show that the supervisory defendant was actively involved in depriving him of a right secured by the Constitution. *Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir.1997). With regard to prison supervisors:

> A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)). In *Iqbal, supra*, the Supreme Court held that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948 (2009) (citations omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. Therefore, in the absence of evidence of supervisory knowledge and approval of subordinate's actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. *O'Connell v. Sobina*, 2008 WL 144199 at *21 (W.D. Pa. Jan. 11, 2008); *Neuburger v. Thompson*, 305 F.Supp.2d 521, 535 (W.D. Pa. 2004).

There are no facts pleaded in the Amended Complaint against Warden Craig being involved in any way in the alleged violations of Plaintiff's rights. There are no facts pleaded against Deputy Warden Reichard, other than his acknowledging receipt of a grievance. They

cannot be held vicariously liable for the alleged acts of others. Accordingly, they are appropriately dismissed.

**C.    The Amended Complaint pleads claims upon which relief cannot be granted.**

*1.    Failure to protect*

The gravamen of Plaintiff's claim against the Mercer County Defendants is their alleged failure to have prevented Inmate Burrows from peeing on him. This is a form of a failure to protect claim.

The Fourteenth Amendment protects pre-trial detainees from punishment without due process of law. *See, e.g., Bistrian v. Levi*, 696 F.3d 352, 373–74 (3d Cir. 2012). The standards in failure to protect claims involving pre-trial detainees under the Fourteenth Amendment are analogous to the standards established under the Eighth Amendment. *Id*. at 367. "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Id*. at 367; accord *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997).

Deliberate indifference is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). "It is not sufficient that the official should have known of the risk." *Bistrian*, 696 F.3d at 367. However, "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Here, Inmate Burrow is alleged to have been out of his RHU cell for his exercise period, while Plaintiff remained locked down in his cell. The Amended Complaint does not allege that Burrow had urinated on Plaintiff or anyone else before the alleged incident. More to the point, there is no indication that the jail staff had any warning that Burrow was planning to urinate on Plaintiff, if there even was such a plan.

Even in a restrictive housing unit an inmate has a right to an hour of out-of-cell exercise five days per week. 37 Pa. C.S. § 95.238. Permitting Burrows to be outside of his cell is in no way demonstrative of deliberate indifference. Nor would an allegation that Burrows was not stopped in time. None of the Mercer County Defendants are alleged to have been present or aware that it happened. To the contrary, Plaintiff claims he had to tell Officer Stoner after the fact. Even if, for the sake of argument, an officer had been on the block and had seen Burrows approach Plaintiff's door, there is nothing alleged that would suggest that the officer could have stopped Burrows in time. In Plaintiff's own telling, Burrows came to the door and started peeing on him before he was even able to get off the floor.

If Burrows peed on Plaintiff as alleged, Burrows himself is the appropriate defendant on a common law battery theory.  What is alleged in the Amended Complaint is not enough to state a civil rights claim against the correctional officials.

2. *Conspiracy*

The Amended Complaint alleges that the Defendants "either coerced Burrows or provided substantial encouragement for the actions he took. Put another way, Inmate Burrows is either participating with state official defendants named herein, or is conspiring with them."

Amended Complaint at p. 4 (supplement). If this allegation is intended to assert a cause of action for conspiracy, it fails.

A prima facie cause of action for civil rights conspiracy requires a plaintiff to establish (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class or persons of equal protection of laws or of equal privileges and immunities under laws (3) and an act in further of that conspiracy; (4) whereby the person is either injured in his person or property or deprived of any right or privilege of citizen of the United States. *Keenan v. Allan*, 889 F. Supp. 1320, 1364 (E.D. WA 1995), aff'd 91 F.3d 1275 (9th Cir. 1996).

Similarly, "[u]nder Pennsylvania law, a claim for civil conspiracy requires proof 'that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy. This unlawful intent must be absent justification.'" *McGary v. Williamsport Reg'l Med. Ctr.*, 775 F. App'x 723, 732 (3d Cir. 2019) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)). "Under Pennsylvania law, '[a] single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves.'" *Id*. at 732–33 (quoting *Grose v. Procter & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super Ct. 2005) (alteration in original) (quoting *Thompson Coal*, 412 A.2d at 472); s*ee also Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 508 (Pa. Super. 1992) (explaining that employees and a corporation are "one and the same" when employees "act within the scope of their employment").

A conspiracy claim must be based upon more than mere speculation. *Young v. Kahn*, 926 F.2d 1396, 1405 (3rd Cir. 1991); *Williams v. Wettick*, 241 Fed. Appx. 797 (3d. Cir. 2007)

(mere claim that judges conspired to violate plaintiff's rights, without more, could not support a claim upon which relief may be granted). As the Middle District noted in *Corliss v. O'Brien*, a plaintiff alleging conspiracy "cannot rely on broad or conclusory allegations." *Corliss v. O'Brien*, 2005 WL 115836 (M.D. Pa. April 29, 2005) (citing *Dennis v. Sparks,* 449 U.S. 24, 27-36 (1988)). "On the contrary, he must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right." *Id*. (*citing Chicarelli v. Plymouth Garden Appts*., 551 F. Supp. 532, 539 (E.D. Pa. 1982)).

The Amended Complaint fails to plead any facts as to when, where, or who allegedly conspired with Inmate Burrows to violate Plaintiff's civil rights. The allegations are simply boilerplate legal conclusions unsupported by fact. Those conclusory allegations are not sufficient to permit a conspiracy claim to go forward.

3. *Inmates do not have a constitutional right to have a grievance answered.*

The Amended Complaint alleges that Plaintiff filed a grievance which was forwarded to Deputy Warden Reichard. His grievance was "acknowledged in writing by Deputy Warden Reichard." *Id*. at ¶ IV(C)(2). However, in Plaintiff's opinion, "no appropriate action was ever taken." *Id*. at p. 4 (supplement). Even if that were true, what is alleged is not a civil rights violation.

This Honorable Court dismissed an identical allegation concerning the Beaver County Jail's grievance system in *Gross v. Schouppe*, CIV. ACTION No. 2:12-cv-00269-CRE at Doc. 66 (W.D. Pa. 2012) (Eddy, J.) In *Gross*, this Court granted Beaver County's Rule 12(b)(6) motion concerning an inmate's claim concerning the grievance procedure, holding as follows:

> An inmate does not have a constitutionally protected right to a grievance procedure. *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)); *Anderson v. Pennsylvania*, 196 F. App'x 115, 117 (3d Cir. 2006); *Rhoades v. Adams*, 194 F. App'x 93, 95 (3d Cir. 2006) ("the inmate grievance procedures, in themselves, do not confer a liberty interest protected by the due process clause in the inmate grievance procedures."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, Plaintiff cannot maintain a constitutional claim based on his perception that his grievances were not properly processed, investigated, or that the grievance process is inadequate. *See, e.g., Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) ("[D]efendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim."); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (citing cases from the Fourth, Eighth, Seventh, and Ninth Circuits); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state").

*Id*. at 27. Even where a correctional facility has a grievance procedure, a violation of those procedures does not rise to the level of a civil rights violation. *See Hoover v. Watson*, 886 F.Supp. 410, 418 (D. Del. 1995), aff'd. 74 F.3d 1226 (3d Cir.1995); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), cert denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988). Any claim arising out of the adequacy of a response to the filing of a grievance is appropriately dismissed with prejudice.

    4.    *Conditions of confinement*

The Amended Complaint's supplement alleges that "'Flood lights' remain on 24/7 inside of the cell" which caused "headaches and difficulty sleeping." *Id*. at p. 5 (supplement). He also claims that he was denied a mattress between March and May of 2022 when he was in the Jail's Restrictive Housing Unit ("RHU"). *Id*. at pp. 5-6 (supplement). On these conditions of confinement claims, he seeks injunctive relief in the form of an Order requiring RHU inmates to be given mattresses and to prevent the Jail from illuminating the RHU cells at night. *Id*. at p. 5 (supplement).

Inmates do not have a constitutional right to darkness at night. As the Third Circuit explained in the non-precedential opinion in *Murray v. Keen*, 763 F. App'x 253, 255–56 (3d Cir. 2019), the court agreed with the "number of courts [that] have held that continuous lighting is permissible and reasonable when used in support of legitimate penological justifications, like the need for security and the need to monitor prisoners." *Id*. (citing *Chappell v. Mandeville*, 706 F.3d 1052, 1059 (9th Cir. 2013); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987); *Wills v. Terhune*, 404 F.Supp.2d 1226, 1231 (E.D. Cal. 2005); *King v. Frank*, 371 F.Supp.2d 977, 985 (W.D. Wis. 2005) (rejecting a claim based on light from a nine-watt bulb that allowed correctional officers to see prisoners at night). Only under "extreme" circumstances could lighting be a violation. *Id*. at 255 (granting summary judgment to correctional defendants on a pretrial detainee's claims of excessive night illumination). Here, Plaintiff admittedly makes fanciful allegations of there being "flood lights" illuminating his cell. However, as will be detailed in the damages section of this Brief, the requested relief is in injunctive in nature and is not available in this case. What is alleged can be dismissed on that basis.

Similarly, the bald allegation that he was denied a mattress between March and May of 2022 when he was in the Restrictive Housing Unit ("RHU"). *Id*. at pp. 5-6 (supplement) fails because the requested injunctive relief is not available. Accordingly, this claim may be denied.

**D.     The Amended Complaint seeks damages that cannot be awarded as a matter of law.**

The Amended Complaint seeks the full gamut of damages, including compensatory, nominal and punitive damages and injunctive relief. He is not entitled to any of this relief in the manner alleged in the Complaint.

1.   *Injunctive relief*

On these conditions of confinement claims, Plaintiff seeks injunctive relief in the form of an Order requiring RHU inmates to be given mattresses and to prevent the Jail from illuminating the RHU cells at night. *Id*. at p. 5 (supplement). He lacks standing to seek any form of injunctive relief.

It is well settled that prisoners lack standing to seek injunctive relief if they are no longer subject to the alleged conditions they seek to challenge. *Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L.Ed. 2d. 675 (1983); *Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d. Cir. 1981) (holding a prisoner's transfer from a prison moots claims for injunctive and declaratory relief with respect to prison conditions).

Plaintiff is no longer in the Mercer County Jail. *See* docket. The Court's Order of August 15, 2022 states that Plaintiff "is now in Erie County Prison." (ECF No. 20). Accordingly, he lacks standing to pursue injunctive relief.

2.   *Plaintiff's claims for compensatory damages are barred by the Prison Litigation Reform Act.*

Section 803(d)(e) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), prohibits compensatory damages for mental or emotional injury absent allegations of physical injury. *Doe v. Delie*, 257 F.3d 309, 335 n.3 (3d Cir. 2001) (citing *Allah v. Al– Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000))).

Here, Plaintiff is not alleged to have suffered any physical injury. Therefore, he cannot recover compensatory damages for emotional harm arising from Burrows' alleged actions, or from the alleged conditions of confinement.

3.   *Nominal damages*

The Amended Complaint seeks nominal damages in the amount of $5,000. Nominal damages are available where a plaintiff proves a violation of his constitutional rights but cannot prove compensatory damages. *See* Third Circuit Model Jury Instruction 4.8.2 (Nominal Damages). Nominal damages are in the amount of $1.00. *Id*. There is no such thing as a $5,000 nominal damages award. If Plaintiff establishes liability for a civil rights violation, he could be entitled to nominal damages of $1, nothing more.

4.   *Punitive damages*

As a matter of law, punitive damages are not available against municipal entities for alleged violations of constitutional rights. *See, e.g.*, *City of Newport v. Fact Concerts, Inc*., 453 U.S. 247, 271 (1981) (punitive damages not available against municipalities under 42 U.S.C. § 1983). The rationale for the unavailability of punitive damages against governmental entities is obvious: punitive damages are intended to punish. An award of punitive damages against the government would be paid by the taxpayers. Thus, "an award of punitive damages would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised." *Id. at* 263.

The Amended Complaint indicates that it is seeking punitive damages against the Defendants. The Defendants are being sued in their individual and official capacities. *See* Amended Complaint (ECF No. 12 at caption). An official capacity suit represents another way of pleading an action against an entity of which an official is an agent. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690 n.55 (1978). Punitive damages cannot be

imposed upon them in their official capacities for alleged violations of Plaintiff's constitutional rights.

## III. CONCLUSION

For the aforementioned reasons, Plaintiff's Amended Complaint should be dismissed in its entirety. Because further amendment on some of the allegations would be futile, the dismissal should, in part, be with prejudice.

Respectfully submitted,

JONESPASSODELIS, PLLC

By: s/Michael R. Lettrich
MICHAEL R. LETTRICH, Esquire
PA I.D. #80635
E-Mail: mlettrich@jonespassodelis.com

MARIE MILIE JONES, Esquire
PA I.D. #49711
E-Mail: mjones@jonespassodelis.com

Gulf Tower, Suite 3410
707 Grant Street
Pittsburgh, PA  15219
Phone: (412) 315-7272
Fax: (412) 315-7273

Counsel for Defendants,
ERNA CRAIG, DEPUTY WARDEN REICHARD,
OFFICER STONER and MERCER COUNTY
PRISON BOARD MEMBERS

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following CM/ECF user:

John R. Ninosky, Esquire
Marshall Dennehey Warner Coleman & Goggin
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
*(Counsel for Defendant, PrimeCare Medical, Inc.)*

And I hereby certify that I have served via U.S. First Class Mail the foregoing document to the following non-CM/ECF user:

Khalil Newman (45587)
Erie County Prison
1618 Ash Street
Erie, PA 16503
*(Pro Se Plaintiff)*

JONESPASSODELIS, PLLC

s/Michael R. Lettrich
MICHAEL R. LETTRICH, Esquire
MARIE MILIE JONES, Esquire

Counsel for Defendants,
ERNA CRAIG, DEPUTY WARDEN REICHARD, OFFICER STONER and MERCER COUNTY PRISON BOARD MEMBERS

{W0272394.1}